Good morning, Your Honors. May it please the Court, my name is Timothy Scott on behalf of the appellant, Mr. Bueno-Vargas. We ask for reversal in this case because the weekend complaint procedure that was used to detain Mr. Bueno over the weekend and used to charge him is unconstitutional. Counsel, I have difficulty with the relief end of your argument. And for the sake of this question, I want to, I'm going to go ahead and assume that holding him for more than 48 hours was a Fourth Amendment violation under the relevant cases. I'm not sure what flows from that because the only purpose for that determination is whether to detain him. In other words, one could have let him go and still charged him with a crime. So the bad thing that happened to him was staying in jail for, you know, another two days or one day, whatever it turned out to be, when he either should have had the determination of probable cause or he should have been out on the street waiting to go to trial. But I don't understand how you get from there to saying, well, never mind about charging him with the crime or convicting him of the crime. So if you could explain to me why, even if you're right, your remedy is to overturn this conviction rather than to go forward in a 1983 action for damages or some other remedy for unlawfully holding him for that period of time. The challenge in this case is remedy, Your Honor, because we can see there wasn't new evidence that came to light during this unconstitutional detention. He didn't make additional statements. And so the traditional remedy of suppression provides no remedy at all. It's the unique case. You want to suppress a defendant. Well, certainly I understand you can't suppress the body and that constitutional law doesn't hold to the contrary. How do you get around Gerstein? Gerstein says you don't dismiss. Again, this is the unique case where the prejudice is the violation that a presumptively innocent man was held over the weekend. What we rely on is United States v. Lopez and the triumvirate of rationales that they use there to provide a remedy to protect judicial integrity and to prevent further violations of the law. Why isn't a 1983 action or an injunctive action or something like that perfectly adequate to deal with the wrong, which was that being held for that extra two days? It wasn't wrong to charge him or convict him in these circumstances because, as you can see, all the evidence happened before or after. Nothing arose from that extra time except the time itself. In response to the argument that a 1983 action would do the first part to provide a remedy, maybe arguably he could pursue that. I would suggest as a practical matter that for a person of limited means like Mr. Bueno Vargas hailing from Tijuana, Mexico, he would, as a practical matter, have a difficult time getting an attorney to take his case, particularly when he's charged with a drug offense. There's a fee provision. I'm sorry? There's a fee provision. Correct. And there's punitive damages, too. I recognize that. But he's also charged with a drug case, and it's not an attractive case, I would imagine, to take to a civil jury. But even if that's true, that answers the provide a remedy prong of Lopez, it still doesn't protect judicial integrity or prevent, most importantly, future violations of the law. I think it's important to note Mr. Counsel, Mr. Lopez requires prejudice. And you don't argue in your briefs that the delay affected your case at all. It's difficult to point to some discrete piece of evidence or something that arose because of that. I think this is difficult. That's an impossible. It's difficult. It isn't difficult, Your Honor. It's certainly, we can't point to It's way more difficult than you can do right now. Well, I think it's important to note, Your Honor. But this is not really a case where the district court provided no remedy. The court, in an argument, again, and, I mean, generally took cognizance of the problem and entered a remedial order. Why is there an abuse of this? I mean, again, in questions like this where the arguments involve the integrity of the judicial process, fairness of the system, and so on, why isn't the district court in the best position to make that determination, having looked at the situation, having entered the remedial order, not maybe the remedial order you would like, but a remedial order? Why isn't that, why is it an abuse of discretion? Well, the district court did not enter any remedial order. In fact, the district court specifically declined to rule on whether this was lawful or not. It said, I won't decide whether this is lawful or unlawful. I simply decide that there's no prejudice. The problem is that this isn't a mistake. This isn't something that was some sort of an exigency. This is the stated and specific policy in the Southern District of California. It's not limited simply to border bus cases. Any person charged with any offense in the Southern District of California does not get a probable cause determination under oath before a magistrate judge if they're arrested on a Friday or a Saturday. It is the stated and explicit policy of the Southern District. What I suggest to this Court is to say that there's no prejudice and to decline to reverse. It's simply an invitation to continue the practice. No, it's an invitation to bring a different kind of case that would enable you to obtain an injunction or other relief that orders the government to change its ways. Isn't that what the invitation is? Again, it's an invitation for Mr. Buenovargas in particular that rings hollow because assuming that there's no argument that he had his rights violated, again, he's left with no remedy vis-a-vis his criminal case. That's the problem and that's the heart of the argument. But where there's no prejudice, why should he get a remedy? In other words, his case, if he had been let out of jail for that two-day period and everything else had been the same, everything else would have been the same, and the government was entitled to try him and the jury was entitled to convict him. So I guess I have a hard time seeing why he should obtain a windfall, really, in the criminal context from what happened. I would respectfully disagree with the Court that it should be couched as a windfall. You might similarly argue that any suppression of evidence or any reversal for an error made below is a windfall if you operate under the... Not if there's prejudice. I'm sorry? Not if there's prejudice. It's not a windfall. But I guess what concerns me is I don't see prejudice from this particular problem. I have trouble with the nexus between the thing that happened and the remedy that you're seeking. I would simply submit that any time we ask the Court to reverse under its supervisory powers, there will be an element of... The two days come off a sentence, right? I'm sorry? The two days are subtracted from a sentence. No, Your Honor. No. They're not? No. I mean, in the sense that you got sentenced or you received credit for time served, I guess that you could argue that that counts as part of the 50 months that he's now serving. I would respectfully argue that time in custody should not be... Well, what else could it mean? I'm sorry? He got credit for time served. You're right. I misunderstood the question. I thought you meant that he was sentenced to 50 months minus two days. But you're correct. He gets credit for time served. He gets credit. So in that sense, it's not like he spent extra time. He didn't spend extra time at the tail end of a sentence, but he did spend extra time in custody as a presumptively innocent man without a valid probable cause determination. With that, I'd like to reserve my remaining time. Okay. Thank you, Your Honor. We'll hear from the government. May it please the Court. My name is Joseph Wydorko, and I represent the United States in this case. I think the Court is correct that the remedy in this case for any violation of the Constitution would be either through a Section 1983 action or some type of injunctive relief. Is it true what the defense counsel tells us that this is the way business is done in the Southern District of California? Yes, Your Honor. The record wasn't developed as to exactly what the procedures are. But both of you practice there all the time in this area, so you know. Is this how it's done? Yes, Your Honor. Is there a continuing policy of violating this particular rule? Well, Your Honor, in our view, there is no violation. I think it's the same in San Diego just as often as they do the rest of the state, right? Pardon, Your Honor? Weekends happen down there just as often as they do here, right? That's correct, Your Honor. And, yes, there is a weekend facsimile procedure that they use when defendants are arrested late on Friday, early Saturday morning in order to comply with the constitutional requirement that there be a probable cause determination within 48 hours. They do use this procedure. And my understanding is they do use it in some other districts. I'm not sure which ones, but a similar procedure. But they don't manage to. Pardon, Your Honor?  I don't understand. No, they use this procedure when a defendant is arrested on a weekend after a warrantless arrest. Gerstein requires that there be a probable cause determination within 48 hours in order to comply with that. I mean, what the point of Gerstein was is that we have some neutral and detached magistrate judge determine whether there's probable cause to hold somebody as opposed to just the agent. We didn't have this here, did we?  So, in other words, if an agent is supposed to make an appendix of a statement that says he or she has a penalty of perjury, how can that possibly comply with 28 U.S.C. 1756 46? Well, 1746 makes a statement made under penalty of perjury to be the equivalent of a statement made under oath, an affidavit. I don't think there's – if the agent had submitted a – It specifically exempts anything that has to be sworn. Yeah. Well, that's – that's Rule 3 that governs a complaint. The Supreme Court in Gerstein – there's nothing that suggests in Gerstein that Rule 3 applies to these determinations. That was a constitutional ruling, and the Court specifically recognized that there can be variations in state proceedings. What the Supreme Court said is there has to be a determination of probable cause. It said it can be a non-adversary proceeding. It can be – Look at 1746. You got it? Yes, Your Honor. I'll have it put somewhere. There's a paraphragm in the middle of it. Other than dot, dot, dot, an oath required to be taken before a specified official, other than an oath required. As I understand it, your argument is that the Federal rules actually don't tell us specifically how to initiate the probable cause determination. That's correct, Your Honor. I'll get back to that. But I want to address your question. Yes, the rule – the statute does say when it has to be before a specified official. However, the only requirement that there be a probable – that a statement be sworn before a magistrate judge is in Federal Rule of Civil Procedure 3. That's not in the Supreme Court's decision. The Supreme Court said it can be based on written testimony. If an agent submitted a written affidavit to a magistrate judge, I don't think there's any question under Gerstein that that would be sufficient for the magistrate judge to make a probable cause determination. But it wouldn't comply with the Federal rules. But the Federal rules do not address the Gerstein probable cause determination. They require the filing of a complaint after a defendant is arrested. But the Gerstein probable cause determination has to be made within 48 hours. It's a very short time frame. And so this procedure allows the agent to take – to take his information to a magistrate judge and get a determination. I mean, what's important, the reason you have an oath is to impress upon the agent that he needs to tell the truth. He has a duty to tell the truth. And what's the consequence of it if he doesn't? He's subject to a perjury prosecution. That's all that 1746 does. It makes the exact same thing. If an agent makes a false statement to the magistrate judge, he's subject to a perjury prosecution. That's the guarantee to the magistrate judge that the agent is complying with his obligation to tell the truth. So there's no constitutional problem. Gerstein says written testimony. And that's all that's required. The Federal rules of criminal procedure do not specifically address the Gerstein problem. They require – Rule 5 requires that after a defendant is arrested without a warrant, that he be taken before a magistrate judge and that a complaint be filed. But there's nothing in the rule that requires the magistrate judge to make a probable cause determination. That – the rules don't even address that until Rule 5 when you get to the preliminary examination. The complaint – the purpose of a complaint normally is simply to allow a magistrate judge – well, it requires a magistrate judge to issue an arrest warrant. But in the context of an arrest – a warrantless arrest, you don't have that issue. So in our view, this procedure fully complies with the requirements of the Fourth Amendment. I'm sorry. If we follow your logic, would the officer have to swear at all? Well, he is in effect – by making the statement under penalty of perjury – No, no, I understand. I understand. That has – What you're saying is the – there has to be a probable cause determination. And I guess the way the evidence would come before the magistrate is it has to be sworn somehow. Because it has to be evidence. Well, the – I mean, the statute by its terms makes the probable cause statement that's faxed to the magistrate judge the equivalent of an affidavit, as if the agent had sworn. Is that a yes answer to Judge Kaczynski, that somehow or another it has to be sworn either under penalty of perjury like this declaration or sworn in person? Oh, yes. Yeah, I – yes. Excuse me. Yes. I think that's correct. Yes. So the Fourth Amendment does require that there be some kind of – And the reason is because – the reason is that otherwise you don't have evidence. Well – If somebody doesn't present – I mean, if an officer just comes before magistrate and tells a story and is not sworn, I guess that would then not be evidence because it's not under oath. Well, I don't know if it would – yeah, I mean, I guess you could look at it that way. I mean, I guess that's right. I mean, an agent could come in and just tell the magistrate something, but, I mean, there would be a question then of whether it's believable. I mean, the purpose of the oath is to make the person making the statement subject to the penalties of perjury. That's what – In court? That's correct. Witness comes to the court and says, I don't want to swear. I don't want to affirm. I don't want to take an oath. I'm going to declare under penalty of perjury and give my testimony under penalty of perjury. Does that work? Well, no, because the statute applies to written statements. I don't think there's any comparable provision that would apply to oral testimony. And the statute then is 1746? 1746, yes, Your Honor. Okay. So unless the Court has any further questions, our position is that this facsimile procedure complies with the Constitution. I mean, what the point of Gerstein was, we need to get a magistrate judge involved as early as possible to make the determination. This process allows a magistrate judge to make that determination. The fact that it's being faxed over to the magistrate judge doesn't make it any less reliable or inaccurate in any way. And the Federal Rules of Criminal Procedure simply don't govern this procedure explicitly. So they do not forbid it. For those reasons, we submit the judgment of conviction should be affirmed. Thank you, Your Honor. Thank you. I believe we have some time left on that one. Thank you, Your Honor. I'd like to try to use my remaining minute 50 to address three points on the merits as to whether this is constitutional and complies with the Fourth Amendment. First, I disagree with the government that Gerstein somehow dispenses with the oath requirement and can ratify this procedure. What Gerstein held is that the Florida District Court and later the Eleventh Circuit was in error in suggesting that a probable cause determination had to include the full panoply of rights for a defendant, counsel, confrontation, and compulsory process. Gerstein simply held no, that it is the same standard as an arrest warrant, and this has traditionally been done on written testimony, but it never said not under oath and not complying with what the Fourth Amendment has always required, which is testimony under oath to establish probable cause. It's important that it establishes the same standard for arrest, which includes the oath requirement, not less, which is what the government seeks to argue in this particular case. Secondly, the federal rule of the holding of Gerstein is that, is simply that you don't have a full-blown adversarial proceeding. It never says that you can dispense with the oath requirement entirely. Where are you finding the oath requirement for an arrest warrant as distinct from a declaration under penalty of perjury? The appellant cited 1746 in its opening brief, that this written testimony only applies to cases other than those under deposition, an oath of office, or in particular here, before a specified official, and that specified official for 200 years has been a magistrate judge under oath for probable cause. I would disagree with the government. I didn't understand that answer. Where do you get the requirement that this be sworn as opposed to made under penalty of perjury? Where does that requirement come from? The oath requirement comes from the Fourth Amendment, that no warrant shall issue except under probable cause, under oath. And then in 1806 the Fourth Amendment says under oath, under oath or affirmation. And then an affirmation. How is this different? If someone says, I am willing to be prosecuted for perjury if anything I say is a lie. I intend to tell the truth. Why is that different than an affirmation at least? I understand why it's maybe different than an oath. But why is that any different than an affirmation, which is I affirm that I will tell the truth? It seems even stronger an assertion that they intend to be truthful. I don't want to get affirmation as it's used in oath and affirmation confused with an unsworn declaration. I think what affirmation in that sense means is simply that you're not swearing to God that you're taking an oath or affirmation. But why is this any different? The point of the whole thing is to have someone with some seriousness assert that they really mean to be telling the truth and that they're willing to suffer some consequence if they lie. So why isn't this sufficient to do that? Because the cases, and many of them that I cited are out of circuit, hold that it's the act of giving the oath and the act of actually standing and taking an oath that's designed to impress upon the witness the solemnity of the occasion. You wouldn't allow anything in writing then, really. You'd still have to be in person in front of somebody in your view then. If you have to actually look someone else in the eye and say, I'm giving myself this consequence of a perjury prosecution. Well, I think initially under Rule 3, it does say under oath before a magistrate judge. That's not this thing. Rule 3 does not relate to this process specifically, does it? I disagree. We read the rules. Your answer, Judge Graber, would be when you swear before an order, you are looking somebody in the eye. I'm sorry? When you swear something before an order, you are looking somebody in the eye. Correct. But I would submit and I would concede that it would be a closer question if the magistrate had picked up the phone and the agent had picked up the phone and administered a telephonic oath, at least. I, Judge Porter, swear to tell the truth and did that formal act. Other than the fact that it's more usual, I don't understand the principled distinction between those two things. Because in both cases, there's a promise to tell the truth and there's an acknowledgment that there's a serious consequence, i.e. a prosecution for a crime for not telling the truth. So what's the principled reason, other than because it's always been like that, why those two things can't suffice? Again, I would rely on the language of those primarily telephonic search warrant cases, Frazier out of the Eighth Circuit, Turner out of the Second Circuit. Didn't they have to raise their hand or was it enough of a swear? A closer call, perhaps, if it seemed that they should raise their hand to take an oath. Raising their hand was to show that you didn't have a brand on your palm, a common law, that you're not a felon, therefore entitled to take an oath. I mean, it had a purpose, but it no longer does. We no longer have people who are branded so they can't take an oath. So we still raise our hand, but it serves no function. An oath is just as good if a person refuses to raise their hand, right? It's a formal procedure that arises out of the history of the Fourth Amendment. But we now have this other procedure which seems to work very well. People get prosecuted on occasion for filling out a declaration on their penalty of perjury. As Judge Graber says, it's actually stronger in some ways because it's just perjury. It keeps people on notice that there's an actual criminal consequence to swearing falsely. Where specifically do we look to say that that's not good enough? Again, to the Fourth Amendment itself that says oath, and then to the 1806 Supreme Court decision that says that custody is unlawful, absent good cause appearing, supported by oath. And then the Sixth, the Second, and the Eighth Circuit. But it doesn't tell us what oath means. But that's why I rely on those out-of-circuit cases to say exactly what the oath means, which is that formal act, the giving and the taking of an oath. This is from those un-modern other circuits? I'm sorry? Those outmoded other circuits? Correct. The circuits that have read and enforced the history and the meaning of the Fourth Amendment. I mean, this is a serious issue. We have a situation. We have a border district. And unless we're going to have to sort of require magistrates to come in and sort of be there. I mean, there's a reason for it. Of course, we'd require whatever is required. But we'd have to be pretty persuasive that this procedure where you fax the thing in, where it's on the penalty of perjury, where you can prosecute the officer if he lies. That's not good enough. It's absolutely an important issue. And it's an issue that was resolved unilaterally. It's not in any rule of procedure. It's not even in the local rule in the Southern District of California. The government went to great lengths to preclude. It's not the way they impound grand juries. Well, that's true. That's certainly a different issue. But, no, this is a decision that was made unilaterally without any public comment. And it's something that the government prevented even defense discovery from determining exactly what is the procedure, where is it written down, how is it followed. And what we suggest to the court is when you're dealing with people's liberty and when you're dealing with custody of a presumptively innocent person, then at a bare minimum it should be something that was. Let me ask you the last question. Aside from the formalism of sort of looking somebody in the eye and raising their hand and all that, what real substantive detriment is suffered by a defendant from having a procedure where the officer swears under penalty of perjury and faxes in to a judicial officer as opposed to having some sort of procedure where the officer actually comes face-to-face with a judicial officer? We know that the latter procedure will be more cumbersome, more expensive, impose more burdens on both the officer and the judicial officer. What do we get in return? What is the added benefit to the defendant? Fundamentally, a probable cause determination is a test of credibility. It's weighing the testimony, judging the credibility of the witness. And they are a witness. There wasn't even any suggestion at the district court level that the agent does any procedure to demonstrate who they really are. Literally, it's a phone call claiming to be the agent, a fax, and then a fax back on a separate piece of paper that says, I find probable cause that the defendant, and then plural in parentheses because it could apply to any defendant, committed an offense. At the risk of sounding pejorative, it's a rubber stamp procedure that doesn't comply with the Fourth Amendment. And the harm is that it's subject to abuse. And it, again, betrays the history of the oath requirement of the Fourth Amendment. You wouldn't want the magistrate just to hear you said that, would you? Well, I made the same argument at the district court. I respectfully submit that it betrays the history of the Fourth Amendment, that it is, in fact, a procedure that doesn't comply with the law. Okay. Thank you. Cases are your business. Thank you, Your Honor. We're going to take a short recess. About five minutes.
judges: D.W. Nelson, Kozinski, Graber